WATRISS *v.* PIERCE *& als.*

As a general rule, if an obligee does an act to the injury of the surety; or, by a binding agreement between himself and the principal, varies the terms of the obligation, or enlarges the time of performance, without the consent of the surety, the surety will be discharged.

The plaintiff agreed to let one N. have $10,000 in cash, and to convey to him a tract of land for $10,000 more, and to take N.'s two notes therefor, payable in two years, and the pledge of certain railroad shares as collateral security, provided N. would also furnish him the bond of responsible men to take the shares and notes at the expiration of the two years, and pay such sum as should remain unpaid upon the notes. The defendants, with the knowledge of the plaintiff, executed the bond, to be delivered to him upon the terms above specified. Afterwards, by an agreement between the plaintiff and N. without the knowledge of the defendants, the plaintiff let N. have only $8,317, the balance being deducted as two years' interest on one note, and one on the other, and took back a mortgage of the land.—*Held*, upon demurrer to a plea setting forth the above facts, that the undertaking of the defendants was collateral to that of N., and that their liability to pay the notes was conditional upon his failure to pay the same.—*Held*, also, that the new contract between the plaintiff and N. was a fraud in law upon the defendants, and discharged them from their covenant.

Statutes against usury, which apply only to the remedy, can be enforced in those States only where the contract is made.

Where a contract was made in Massachusetts, alleged to be usurious by a statute of that State, which provided that a deduction of three fold the amount taken should be made from the sum found due, and a plea of usury under that statute was interposed—*Held*, that the statute applying to the remedy only could not be enforced in this State.

COVENANT. The declaration contained four counts, which were in substance as follows :

In a plea of covenant broken, for that the defendants, at Ports-mouth, on the 15th day of August, 1851, by their deed of that date, sealed with their seals and under their hands, duly executed and in court to be produced, setting forth that whereas the plaintiff, by the name and style of William Watriss, of Cambridge, in the Commonwealth of Massachusetts, had loaned to Samuel Nott, of Boston, agent of the Portsmouth and Concord Railroad, the sum of twenty thousand dollars for the term of two years, and had taken therefor two promissory notes of even date with said deed, made by Nott, and payable to his own order,

and by him endorsed, each for the sum of ten thousand dollars, payable in two years from the date thereof, with interest semi-annually, and that the said Nott had conveyed to the plaintiff six hundred and seventy-two shares of the capital stock of said railroad, at the price of thirty-three dollars and thirty-three cents per share, to be held as collateral security for the payment of said notes, and interest; in consideration of one dollar to said defendants, paid by the plaintiff, and of other good and valuable considerations, covenanted and agreed with the plaintiff that if the notes or either of them should not be paid at maturity, or any part of the interest should remaim unpaid at the maturity of said notes, they would on demand take a conveyance of all of said shares of stock and said notes, and would pay therefor whatever sum or sums, principal and interest, that might so remain justly due upon the said notes, or either of them. All dividends paid on said stock to be credited on said notes.

And the plaintiff avers that said two notes against said Samuel Nott, for $10,000 each, dated, made payable and endorsed as aforesaid, were not paid at maturity; that the notes became due and payable on the 18th day of August, 1853, and that there was then and there justly due on said two notes the sum of twenty thousand dollars as principal, and six hundred dollars as interest. And said plaintiff avers that on the 20th day of August, 1853, he notified each of said defendants that the two notes of Nott had arrived at maturity and remained unpaid, and that there was due on said notes twenty thousand dollars as principal, and one year's interest, being six hundred dollars on one of said notes. And that on the same day he caused said six hundred and seventy-two shares of the capital stock of the said Portsmouth and Concord Railroad and said notes to be conveyed to said defendants, and offered to deliver the stock and notes so conveyed to the defendants, upon the payment by them of the principal and interest, so then being and remaining justly due and unpaid upon the notes as aforesaid. And then and there demanded of the defendants that they should take a conveyance of all of said shares of stock and the notes, and pay to the plain-

tiff the sum of principal due on said notes, being twenty thousand dollars, and the interest due on one of said notes, being six hundred dollars, all of which the defendants then and there neglected to do. And the plaintiff now here in court produces said notes and stocks conveyed as aforesaid, and is ready and willing to deliver the same to the defendants upon the payment by them of the amount of principal and interest justly due on said two notes, according to the terms of the defendants' deed.

And the plaintiff averred that the notes had arrived at maturity and remain unpaid, and that the plaintiff had performed all and singular the conditions precedent in said deed contained, to entitle him to receive the payment of the amount due on said notes from the defendants. Yet that the defendants, though often requested, have not paid the same, and did not keep their covenant, but broke the same; for that they did not, on demand, take a conveyance of all of the shares of stock and notes, and pay therefor whatever sum or sums, principal and interest, justly remaining due upon the notes. And so the defendants their covenants have not kept, but have broken the same.

The defendants pleaded three special pleas, alleging fraud, which was stated in substance as follows: That the plaintiff ought not to have or maintain his aforesaid action thereof against the defendants, because they say that on the 14th day of August, 1851, at Portsmouth, it was agreed between the plaintiff and the said Samuel Nott that the plaintiff should sell to Nott three lots of land adjoining Mount Auburn cemetery, containing about seven acres, and should also furnish Nott ten thousand dollars in cash, and that Nott should give Watriss for the above consideration his notes for twenty thousand dollars, averaging twenty-four months time; with sixty thousand dollars of the capital stock of the Portsmouth and Concord Railroad at par, as collateral security, with an agreement of responsible men to Watriss, that they would take the stock aforesaid at the amount for which it should be pledged by Nott, and pay the cash for the same in the event that Nott should fail to pay said notes or interest; the notes to be made payable with interest semi-annually.

And thereafterwards, on the 15th day of the same August, Nott, in order to comply with the stipulation in his said agreement with the plaintiff, that responsible men should agree with the plaintiff to take the said stock and pay the said notes and interest in case Nott should fail so to do, applied to the defendants to become bound to Watriss to take the stock and pay the notes and interest, in case Nott should fail so to do.

That Nott then and there stated and communicated to the defendants the terms of his agreement with the plaintiff, and represented to the defendants that if the defendants would give to him, to be delivered to Watriss, the deed and covenant mentioned in the declaration, it would and should be delivered by him upon and in execution of the agreement aforesaid ; and that he should thereby obtain of Watriss the said sum of ten thousand dollars in cash, and should be able to raise a further large sum in cash, by the sale or mortgage of the land to be conveyed to him by Watriss.

And the defendants then and there, at the request of Nott, as sureties for him, to enable him to obtain the said sum of ten thousand dollars, according to the said agreement, and that he might be able to raise the said further sum by sale or mortgage of the said land, and trusting to the representations and statements of Nott, signed and sealed the deed and covenant, and delivered it to Nott, in order that it might be given and delivered to the plaintiff upon the agreement aforesaid and for the purpose aforesaid. Yet that Watriss refused to perform his said agreement, by paying to Nott the said sum of ten thousand dollars, and conveying said land according to the agreement aforesaid and on the security aforesaid ; and though Watriss well knew that Nott had made to the defendants the representations and statements aforesaid, and that the deed was placed in the hands of Nott to be delivered for the purpose aforesaid, and on the agreement aforesaid, it was thereafterwards, on the 16th day of the same August, fraudulently and covinously agreed by and between Nott and the plaintiff, without the consent or knowledge of the defendants, that instead of ten thousand dollars in cash,

as stipulated by the said former agreement, Nott should receive a smaller sum, to wit, the sum of eight thousand three hundred and seventeen dollars only ; and the residue and balance of said sum of ten thousand dollars should be reserved and applied for two years' interest in advance on one note of ten thousand dollars, and one year's interest in advance on the other note of ten thousand dollars, to be given by Nott to Watriss ; and that Nott, upon taking the conveyance of said land, should mortgage the same back to Watriss, to secure payment of one of the notes for ten thousand dollars, payable in two years from date, with interest as aforesaid, in addition to the security which Watriss had theretofore agreed to take therefor, as herein before stated.

And that thereafterwards, on the same day, in pursuance of the said fraudulent and covinous agreement, Watriss fraudulently and covinously paid to Nott the sum of eight thousand three hundred and seventeen dollars instead of the sum of ten thousand dollars, and conveyed to Nott the land herein before mentioned, and fraudulently and covinously took from Nott a mortgage of the same land, to secure payment of one of Nott's two notes for ten thousand dollars each, as aforesaid, which are the same notes which are mentioned in the plaintiff's declaration, and endorsed on one of said notes two years' interest thereon in advance, and on the other note one year's interest thereon in advance, instead of paying the whole of the sum of ten thousand dollars to Nott, according to the agreement first mentioned ; and that Nott thereupon fraudulently and covinously delivered to Watriss, and Watriss fraudulently and covinously received of Nott, the said deed in the said covenant mentioned, in fraud of the defendants, and without their knowledge and consent. By which fraudulent and covinous change in the terms of the original agreement Nott was prevented from receiving the full sum of ten thousand dollars, and was also disabled from receiving any further sum of money by the sale or mortgage of said land, and so disabled to pay the defendants the sum they might pay as his sureties, by the deed aforesaid.

And the defendants averred that Nott took and applied the

money, so by him received of Watriss, to his (said Nott's) own use, and that the defendants, in their undertaking by their deed, were mere sureties for Nott; and so the defendants said that the said deed was obtained from them by the fraud and covin of Watriss and Nott.

The defendants also pleaded usury, alleging that the taking of the two years' interest in advance on one of the notes, and one year on the other, was by the statute of Massachusetts usurious; also that usury to the amount of $5,000 entered into the contract for the land; and they claimed that a deduction should be made from the amount due upon the notes, according to the provisions of said statute.

To these pleas of fraud and usury the defendants demurred. There were also many other pleas, on which issues were joined. The only questions, however, brought before the court at the present time were those arising upon the demurrer.

*Marston, Hatch,* and *Emery,* for the defendants.

The first position which we take in reference to the pleas is, that they allege that the defendants were sureties of Nott, that Nott and the plaintiff made an alteration of their original contract, unknown to the defendants, and that these facts are well pleaded, and constitute a defence to the action. The declaration shows that the contract was substantially one of suretyship. The agreement of the defendants was to take up the notes of Nott, and to take a transfer to themselves of the stock pledged by him to the plaintiff, and to pay such sum only as Nott should leave unpaid on the notes. Had they made the payments and taken the notes and stock, they must have held them subject to redemption by Nott. The obligation of the defendants to pay was conditional, and depended upon the failure of Nott to pay. Their situation was in all respects that of sureties, and there is no feature in the case which distinguishes it from an ordinary guaranty or suretyship. 2 Am. Leading Cases 288.

The contract which the plaintiff seeks to enforce against the defendants is not the contract into which they entered. The

contract guaranteed by the defendants was that which was made known to them by Nott, when they signed their deed. The contract afterwards executed between the plaintiff and Nott was materially different, and that he cannot enforce against the defendants.

We cite in illustration of this position the following authorities: *Peacock* v. *Bishop*, 3 B. and C. 605 ; *Wright* v. *Russell*, 3 Wils. 531 and 539 ; *Strange* v. *Lee*, 3 East 484 ; *Myers* v. *Edge*, 7 Term 254 ; *Penoyer* v. *Watson*, 16 Johns. 100 ; *Wright* v. *Johnson*, 8 Wendell 512 ; *Glyn & als.* v. *Hertel*, 8 Taun. 208 ; *Dobbin* v. *Bradley*, 17 Wend. 422 ; *Birkhead* v. *Brown*, 5 Hill 634 ; *Walroth* v. *Thompson*, 6 ditto 540 ; *Walch* v. *Buckman*, 10 Johns. 180 ; *Lanure* v. *Barker*, 10 Johns. 312 ; *Lanure* v. *Barker*, 3 Wheaton 101 ; *Bonar* v. *McDonald*, 1 Eng. L. and E. 8, per Ld. Brougham ; *Campbell* v. *French*, 6 Term 200 ; see Kenyon's Opinion ; *Watson* v. *Alcock*, 19 Eng. Law and Eq. 64 and 239 ; *Capel* v. *Butler*, 2 Sim. and Stu. 457 ; *Straton* v. *Batsall*, 2 Term 360 ; *N. W. Railway* v. *Whinray*, 26 Eng. Law and Eq. 488 ; *Combe* v. *Wolf*, 8 Bing. 156 ; *Boston Hat M. Co.* v. *Messenger*, 2 Pick. 223 ; *Bonsor* v. *Cox*, 6 Beavan 110 ; *Archer* v. *Hale*, 4. Bing. 464 ; *Whicher* v. *Hall*, 5 Barn. and Cress. 269 ; a case in point.

In the next place we contend, that if the court should be of opinion that it must appear that the alteration in the principal contract was injurious to the surety, in order to discharge him, it so appears in this case. The reservation of interest in advance was in violation of the original contract, and injurious to the defendants. And equally so was the mortgage upon the land. Every change in the contract between the plaintiff and Nott which diminishes Nott's resources and his ability to pay, or which hampered him in the use of the funds he was obtaining by the intervention of the defendants, or which tended to impair his ability to complete the railroad of which he was agent, and so might affect unfavorably the value of the stock of that road, which the defendants engaged to redeem, was a wrong to the defendants which would relieve them from their contract. It was

a breach by the plaintiff of the contract itself. We cite, in addition to the former authorities, the following: *St. Albans* v. *Shore*, 1 H. Blackstone 270, and cases there cited; *Heard* v. *Wadham*, 1 East 619; *Goodison* v. *Nunn*, 4 Term 761; *Cutter* v. *Powell*, 6 Term 320; 2 Smith's Leading Cases 9, and notes; *Dakin* v. *Williams*, 11 Wendell 69.

The taking of usury in any form was unlawful, both in Massachusetts and New-Hampshire.

If the amount of the usury can be definitely ascertained, the amount of it must be deducted from any sum otherwise due the plaintiff. Or the defendants are entitled to deduct the threefold forfeiture, given by the laws of both States. If the amount of the usury is indefinite, the whole contract is tainted and void. A guarantor may take advantage of the usury in the original contract. *Huntress* v. *Patten*, 2 App. 28. (Maine.)

And usury reserved in Massachusetts may be set up as a defence in New-Hampshire. *Houghton* v. *Page*, 2 N. H. 42.

*Hackett, Christie, Smith,* (of Boston,) and *J. Parker*, for the plaintiff.

The defendant's answer to the plaintiff's claim is, that they are mere sureties for Nott, and that the deed declared on was obtained from them by "fraud and covin" of the plaintiff and Nott. The alleged fraud consists — first, in taking interest in advance; and, second, in taking a mortgage of the land included in the sale, to secure the payment. They also plead usury.

We say that the first two proceedings were lawful transactions, and as to the other that there was no usury.

1. The paying interest in advance was lawful. It reduced the amount of the liability of the defendants. The original agreement fixed no time for the payment of interest, and the mode adopted by the parties did not contravene any previous contract, or the law of the land. So far from injuring the guarantors, it benefitted them by reducing the amount for which they were liable. It was essential that there should appear to have been an injury. *Bank* v. *Willard*, 17 Pick. 150; 8 ditto 457; 10 ditto 129; 23 ditto 154.

2. Taking the mortgage was for the benefit of the guarantors. "Giving time to the principal debtor, or other alteration of the contract, does not discharge a guarantor, if it be shown that he suffered no injury." 9 Penn. (Barr.) 83.

That there is a difference between a surety and the case of a collateral undertaking to guarantee the payment of a debt, is shown by the case of *Norton* v. *Eastman*, 4 Green 521, and *Terrell* v. *Smith*, 8 Conn. 426. In the former the creditor and principal debtor have no right to vary the contract, yet in the latter it is different; for, although the creditor and principal debtor have no right to alter the contract to the prejudice of the guarantor, yet when it distinctly appears that he has not been injured, he cannot complain. Per *Rogers*, Jus., 9 Penn. (Barr.) 84, 85 ; 13 Metcalf 416.

The holder of a guaranteed note does not discharge the guarantor by taking collateral security of the maker without giving him time. 6 Metcalf 553. But we contend that the defendants were not sureties or guarantors ; that their contract was not to pay the notes, but to purchase them, and so the authorities of the defendants do not apply.

3. We deny that there has been any usury; but if there were, the defendants are in no position to take advantage of it. Usury is a defence personal to the party agreeing to pay it. 3 Alabama 158, 643. No person other than the oppressed party to a usurious contract, can avoid the contract on the ground of usury. 7 Conn. 409. But if, in the place where the contract was made and sought to be enforced, the guarantors could avail themselves of the "personal," or other rights of the principal debtor, it would be immaterial to this case, for the Massachusetts statute of usury cannot be set up in an action pending in New-Hampshire.

This contract was made in Massachusetts. It is litigated in New-Hampshire. The Massachusetts statute does not render usurious contracts void, but only gives to the oppressed party the right to a deduction. This relates to and affects the remedy, not the contract. It is a penal law, which the courts of another State will not enforce. 7 Met. 14.

But it is denied that there was any usury. The case of *Sherman* v. *Gassett*, 4 Gilman (Illinois,) 521, is to the same effect. The defendants pleaded the usury laws of Massachusetts.

EASTMAN, J. The pleadings in this case are quite voluminous, and extend over many pages, but the questions presented for decision at this time are but few. These, however, have been argued with much legal acumen and power, and have caused us to hesitate somewhat as to the conclusion to which we should arrive.

Taking the questions in the order presented, and we have first to consider the effect of the pleas setting up a new contract between Nott and the plaintiff. The position is this : That on the 14th of August, Watriss and Nott entered into a contract by which Watriss was to let Nott have $10,000 in cash for two years, and sell and convey to him certain land for $10,000 more : That Nott, in consideration of the same, was to give Watriss his notes for $20,000, payable to himself or order, in two years, with interest semi-annually ; and as collateral security for the payment of the notes, he was to assign to Watriss sundry shares in the Portsmouth and Concord Railroad to the amount of $60,000, at par, and was further to furnish to Watriss an agreement of responsible men to take the stock and notes, and pay for the same, in the event that Nott should fail to pay the notes or the interest.

That on the 15th of August Nott applied to the defendants to sign the agreement to take the stock and pay the notes in case he should fail so to do ; that he stated to them the contract between Watriss and himself, by which he should be enabled to obtain the sum of $10,000 in cash, and raise a further large sum by the sale or mortgage of the land ; and that if they would sign the bond it should be delivered in execution of that agreement with the plaintiff ; that they accordingly signed the bond, to be delivered upon the conditions stated.

That on the 16th of August, Watriss, knowing what had taken place between Nott and the defendants, and the conditions upon which the deed had been put into the hands of Nott, made a

new contract with Nott, without the knowledge or consent of the defendants, by which, instead of letting him have the $10,000 in cash, and conveying to him the land unincumbered, he let him have only the sum of $8,317, reserving two years interest on one note and one on the other, and took back a mortgage upon the land, as security for the payment of one of the notes.

Upon this branch of the case the main question is, whether the alleged new agreement on the 16th of August, and the delivery of the defendant's deed at that time and for the purposes then stated, can form any defence to an action upon the deed. And the solution of this question depends upon the character and effect of the deed itself, as well as the nature of the agreement of the 16th.

And first, what was the character of the defendants' undertaking? Was it absolute and unconditional; an original agreement to purchase the stock and notes at the expiration of the two years, independent and irrespective of the contract of Nott? Or was it conditional and collateral; a contract to pay the notes at maturity, in case Nott failed so to do? Was the position of the defendants that of contractors, to purchase the stock and notes, or was it that of sureties or guarantors for Nott for the payment of the notes?

In a technical and limited sense a surety is a co-promissor or co-obligor, but, in the more general and usual sense, a surety is one who undertakes to answer for any debt or default of his principal, without regard to the peculiar character or special designation given to the contract or undertaking of the principal. A guarantor, also, in a strict sense, is one whose liabilities are in general less than those of a surety, and they depend upon more technical rules. But in an enlarged sense, a guaranty is a promise to answer for the payment of some debt or the performance of some duty, in case of the failure of another person, who in the first instance is liable. 3 Kent's Com. 121.

In many of the books the terms guarantor and surety are used indiscriminately, as meaning the same person. Thus we find it said that " the claim as against a *surety* is *strictissimi*

*juris*, and it is incumbent on the party to whom the *guaranty* is given, and who is enforcing it against the surety to show that he has strictly complied with the terms of the guaranty. And, therefore, if one engage to guaranty the debt of another, provided eighteen months credit be given, the creditor is not at liberty to vary it by giving twelve only, and after the expiration of six more to call upon the surety ; but the surety in such a case would be discharged." Comyn on Contracts 225 ; Lord *Ellenborough* in *Bacon* v. *Chesney*, 1 Starkie 192. And again : " If a promise is made to *guaranty* a bill of exchange for a certain sum, but the creditor takes from the debtor a bill for a much larger amount, it seems doubtful whether this does not wholly discharge the *surety.*" Comyn on Cont. 226 ; *Philips* v. *Astling*, 2 Taunt. 211 ; Chitty on Cont. 499 ; Story on Cont., Tit. Guaranty.

It is clear that these defendants were not in a technical sense sureties for the payment of the notes of Nott, for they were not co-signers or co-promissors with him on the notes. Neither were they, in a strict and limited sense, guarantors for such payment. Their undertaking did not assume the general form and terms of a guaranty in such cases. But still, after a careful consideration of the question, we are of opinion that the undertaking of the defendants was collateral and conditional, and dependent upon the fulfillment by Nott of his contract to pay the $20,000 ; that whether they are to be called sureties or guarantors, or by any other term, the true intention and the legal effect of the undertaking was to answer for the default of Nott; to pay the notes and interest, if he failed so to do. No money was advanced to the defendants ; no land conveyed to them ; and they made no contract to receive either. Their undertaking was not entered into until after Watriss had engaged to convey the land to Nott, and to let him have the money. And the declaration sets forth the contract between Nott and the plaintiff as a recital in the defendants' deed, and as the foundation therefor. The deed may well enough be called an original undertaking, as being contemporaneous with the delivery of the money

to Nott; but it is not, as we apprehend, original in any other view, for it was dependent upon Nott's contract, and made in consequence of that. As an independent undertaking, were it not under seal, it would probably fail for want of consideration, for it is apparent from the instrument itself that the consideration, as between the plaintiff and defendants, was merely nominal; and if it had not been signed to enable Nott to obtain the money and land, and thus a consideration be raised, and had not been under seal, it would be difficult to sustain an action upon it; for without a consideration there can be no valid agreement.

If the contract was to purchase the shares and the notes at the expiration of the two years, it was a very unusual and uncertain price that was to be paid; "such sum as should remain justly due on the notes, or either of them, and all dividends paid on the stock to be credited on the notes." A contract to purchase, whether it be personal or real estate, is not ordinarily made without there is a full understanding and agreement as to the price that is to be paid, nor without some object to be gained by the purchasers. But here all was uncertainty. If the payments made by Nott during the two years should amount to enough to pay the notes, then there would be no valid notes to transfer to the defendants; for Nott having paid the notes, they could not be revived in the hands of any one, and their tranfer would be a mere nullity. Moreover, Nott upon their payment would be entitled to the possession himself. Or if the dividends on the stock should amount to sufficient to pay the notes, then, also, nothing would have to be paid by the defendants, and they were to receive no transfer either of the stock or the notes, without paying what was due on the notes. Viewed simply as a covenant to purchase the stock and notes, the contract would certainly seem to be indefinite and uncertain as to the price to be paid; without object and without consideration. There would appear to be no consideration moving from the plaintiff to the defendants that could make it an original, independent undertaking to purchase. While viewed as a guaranty—as a covenant to pay the notes if Nott failed so to do; as an undertaking collate-

ral to that of Nott, and conditional upon his paying—the deed is consistent, and the consideration sufficient. 3 Kent's Com. 122; 5 East 10; 8 Johns. 129.

Leaving out of the deed the provision for a transfer of the shares of stock and the notes to the defendants, and the instrument is no more than a covenant to pay such sum as Nott should fail to do; a formal guaranty under seal. By that provision all the doubt is raised; but after careful consideration we are unable to see in it any thing more than a provision in terms for that which the law would have enforced without it. It is the duty of a creditor who has an obligation executed by principal and surety, and who has also taken collateral security from the principal, to appropriate the avails of that security to the payment of the debt, or to hold it for the benefit of the surety, who, if he pay the debt, will be subrogated to the rights of the creditor. *Bank* v. *Colcord,* 15 N. H. 119; *Baker* v. *Briggs,* 8 Pick. 122; *Com.* v. *Vanderslite,* 8 Serg. & Rawle 457; *McCullum* v. *Hinkley,* 8 Vt. 147; 1 Story's Eq. Juris., § 326; *LaFarge* v. *Hester,* 11 Barb. Sup. Ct. 159.

Our construction then of the deed of the defendants is this, that it was a conditional undertaking to pay the notes in the event of the failure of Nott to take them up at maturity; that it was an undertaking collateral to his, and depended upon his, and that, in the more general application of the terms, the defendants were sureties or guarantors for Nott that the notes should be paid.

Regarding the covenant of the defendants in the light stated, we come to consider the effect of the transaction of the 16th of August, as set forth in the plea, upon the defendants' liability.

It may be stated as a general rule, in which all the authorities, so far as we are aware, agree, and to which there are probably no exceptions, that if at the time a guaranty, or a suretyship, or any undertaking to answer for the debt or default of another is entered into, there is any wilful misrepresentation of circumstances, or intentional withholding of facts, so that the surety or guarantor makes a covenant or contract which he otherwise

would not, and thus there is fraud in fact practised upon him, he will be discharged by such fraud from all liability on his undertaking. Story says that " a guaranty of the payment of a debt, made by a friend, upon the suppression by the parties of material circumstances, is a virtual fraud upon him, and avoids the contract." 1 Story's Eq. Juris, § 383. But we need not cite authorities to sustain the general position, as we have above stated it.

It may also be laid down as another general rule, that if, after the guaranty, suretyship, or conditional undertaking is entered into, there is any change in the terms or conditions of the contract between the principal and the creditor, whereby a new and different contract is made between them, without the knowledge or consent of the surety, and by which his interests are prejudiced, he will be discharged. Thus a binding contract for the extention of the time of payment, made between the creditor and the principal, without the assent of the surety, discharges the latter from the obligation of his contract. *Savings Bank* v. *Colcord,* 15 N. H. 119 ; *Merrimack County Bank* v. *Brown,* 12 N. H. 320 ; *Crosby* v. *Wyatt,* 10 N. H. 318 ; *Gifford* v. *Allen,* 3 Met. 255. And if a creditor surrenders valid collateral security, without the knowledge of the surety, the latter will be discharged entirely, or *pro tanto,* according to the value of the security thus surrendered. And the fact that other security, as good or better than that surrendered, is substituted for it, will not preclude the surety from availing himself of the discharge. *Savings Bank* v. *Colcord,* 15 N. H. 119.

In *Combe & als.* v. *Woolfe,* 8 Bingham 156, the defendant had guaranteed the payment of porter to be delivered by the plaintiff to one Abraham Joseph ; the guaranty containing no stipulation as to the credit to be given to Joseph. The custom of the plaintiff was to give six months, and then sometimes to take a bill at two. The plaintiff having, without the knowledge of the defendant, given Joseph eleven months credit, it was held that the defendant was discharged from his guaranty. Ch. Jus. *Tindal* said that the surety was exonerated on this general prin-.

Watriss *v.* Pierce.

ciple, that the plaintiffs have, without his assent, altered the situation in which he had a right to expect he should be placed when he gave the guaranty.

In *Pidcock & als.* v. *Bishop*, 3 Barn. and Cress. 605, the defendant gave the plaintiffs the following guaranty, upon which the action was brought: "At the request of Mr. Thomas Tickell I beg to inform you that I will guaranty you in the payment of two hundred pounds, value to be delivered to him in *Lightmoor* pig iron." It appeared on trial that it was agreed between the plaintiffs and Tickell that the latter should pay ten shillings per ton beyond the market price. This sum was to be applied in liquidation of an old debt due to one of the plaintiffs, but the bargain to that effect was not communicated to the defendant, and it was held to be a fraud on the defendant, and to render the guaranty void. *Abbott*, Chief Justice, said: "I am of opinion that a party giving a ·guaranty ought to be informed of any private bargain made between the vendor and the vendee of goods, which may have the effect of varying the degree of his responsibility. The effect of this bargain would be to compel the vendor to appropriate to the payment of an old debt a portion of those funds which the surety might reasonably suppose would go towards defraying the debt, for the payment of which he made himself collaterally responsible. Such a bargain, therefore, increased his responsibility. That being so, I am of opinion that withholding the knowledge of that bargain from the defendant was a fraud upon him, and vitiated the contract." *Bailey*, J., commenced his remarks in regard to the case, by saying that "it is the duty of a party taking a guaranty to put the surety in possession of all the facts likely to affect the degree of his responsibility; and if he neglect to do so it is at his peril." And he observed that the defendant gave the guaranty under a supposition that Tickell would be at liberty to apply all his funds, except what were necessary for his support, towards payment of the iron supplied at the regular market price; and that the concealment of the bargain to pay the ten shillings from the knowledge of the defendant was a fraud upon him, and avoided

the contract." *Holroyd*, Justice, remarked that the effect of the bargain was to divert a portion of the funds of the vendee from being applied to discharge the debt which he was about to contract with the plaintiffs, and to render the vendee less able to pay for the iron supplied to him. *Littledale*, Justice, said that the object of a person becoming a surety for another is to render him a service ; but the effect of such a private bargain as was made in that case would be to defeat the object of the surety ; for if the proceeds of the goods supplied to the vendee were to be applied in discharge of an old debt, a benefit would be conferred on the vendor of the goods, and not on the vendee.

In *Boston Hat Manuf. Co.* v. *Messinger & a.*, 2 Pick. 223, the action was debt on a bond, on which the defendants were sureties for the fidelity of an agent, and Ch. Justice *Parker*, after citing several cases, says that the point of them all is, that the surety shall never be charged beyond the scope of his engagement, as understood by him at the time when he entered into the contract ; or, rather, beyond the purpose and object of his undertaking. And again, after reviewing the authorities more at large, he remarks that the principle is clearly settled, that the contract of a surety cannot be varied without his consent, and that any new terms, important in their nature, imposed upon the principal, or consented to by him, will avoid the obligation as to any act done after such alteration.

In *Rathbone* v. *Warren*, 10 Johns. 587, it was held, that when an obligee does an act to the injury of the surety, or varies the terms of the obligation, or enlarges the time of performance without his consent, the surety will be discharged. And in *Rees* v. *Barrington*, 2 Ves. Jr. 543, Lord *Loughborough* refused to try the question what mischief the variation of the original contract had done the surety, for he said that such a course would lead to a vast variety of speculations upon which no sound principle could be built.

*Miller* v. *Stewart*, 9 Wheaton 680, was debt on a bond, and *Story*, Justice, in delivering the opinion of the court, stated the rule broadly, thus : " It matters not that a surety may sustain

no injury by a change in the contract, or that it was even for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal."

In *Glyn* v. *Hertel*, 8 Taunton 208, the defendant agreed to guaranty the payment of £5000, which the plaintiff might "advance" to S. & Co. At the time, S. & Co. were indebted to the plaintiff for money, and had given a promissory note and bills as security. On receipt of the guaranty the plaintiff cancelled the note, delivered up the bills, and took a new note of S. & Co., and it was held that the defendant was not liable on the guaranty.

To these authorities many others might be added, sustaining substantially the same views. But we will cite only a few. *Stone* v. *Compton*, 5 Bingham N. C. 142 ; *Bacon* v. *Chesney*, 1 Stark. 153 ; *Philips* v. *Astling & al.*, 2 Taunton 206 ; *Evans* v. *Whyle*, 5 Bingham 485 ; *Philips* v. *Rounds*, 33 Maine 357 ; *United States* v. *Hilligas*, 3 Wash. C. C. 70 ; *Smith* v. *Day*, 23 Vt. 656 ; *Walsh* v. *Bailie*, 10 Johns. 180.

The current of the authorities seems to run very decidedly one way, and is to the effect that any variation, between the principal and the creditor, of the terms of the original undertaking, for the performance of which the surety became responsible, will discharge the surety if done without his assent, however the change may affect his interests ; and such is the intimation in *Savings Bank* v. *Colcord*, 15 N. H. 119, although the point is there left undetermined.

But, however that may be, it seems to be well settled that if the change be binding between the parties, and is to the injury of the surety, and without his knowledge, he will be discharged. Such is the general doctrine of the authorities ; that the variation is a constructive fraud upon the surety, whether there be actual fraud or not, and that it vitiates the undertaking.

And such, we think, was the character of the transaction of the 16th of August, between Nott and the plaintiff. It was a variation in the terms of the condition upon which the defend-

ants' deed was to be delivered. It was done without their knowledge ; its tendency was to their injury, and it was a fraud in law upon them. They became bound to the plaintiff for $20,000 ; ten thousand of which was to be advanced to Nott in cash ; and land, estimated to be of the value of ten thousand more, was to be conveyed to Nott free from encumbrances. These terms were materially changed in two respects — first, instead of the $10,000, only $8,317 were advanced ; and instead of Nott's holding the land free from incumbrances, he was required to execute a mortgage back to the plaintiff. Neither of these variations was contemplated by the defendants ; and the plaintiff and Nott both knowing the purposes, object and terms upon which the instrument was executed, had no right to use it in the manner in which they did. It is not to be presumed that the defendants would have executed the bond if they had been informed to what object it was to be applied. And it may well be said that their liability has been increased by the variation. If Nott had received the $1,683, the balance of the ten thousand, it would, for the time being, have increased his means to that extent, and have added to his ability to transact business, and consequently rendered him more able to pay the full amount in the end. And especially may the defendants complain that $561 was taken as interest on the note for the land.

The natural consequence of the mortgage upon the land was also to prevent Nott from raising money upon it, and to cripple him in any business undertaking; and as his means of doing business should be diminished, so would be his probable ability to pay the notes at maturity. Both of these transactions were contrary to the purposes for which the deed was executed, and if not frauds in fact, were so in law. As in *Stone* v. *Compton*, and *Pidcock* v. *Bishop*, and *Glyn* v. *Hertel*, neither the money nor the property was received as contemplated by the sureties. It was upon the faith that the $10,000 should be advanced, and the land conveyed unincumbered, that the deed was made, and that faith has not been kept.

We have not adverted to the fact of the averment in the plea that Nott was the agent of the Portsmouth and Concord Railroad. This may be regarded as a mere *discriptio personæ*, and as having no legal, effect upon the rights of the parties ; while at the same time, if the money was to be used for the purposes of the road, it might have formed a strong inducement with the defendants to sign the obligation, being deeply interested, as it is well known they were, in the advancement of the enterprise. And we may well suppose that it would have been an important consideration with them whether the $10,000 and the land unincumbered were to be received, or only the $8,317, and the land with a mortgage upon it.

It is no sufficient answer to the plea to say that the $1,683 went to reduce the amount of the notes, or that the mortgage would be for the security of the defendants, since the palpable effect of both transactions was to reduce the means of Nott and tie up his hands to that extent. If Watriss could lawfully take $561 of the ten thousand, and apply it in part payment of the note for the land, by the same principle he could take the whole, and thus nothing be left for Nott or his sureties but the land itself. And as was said by *Littledale*, Justice, in *Pidcock* v. *Bishop*, the defendants, instead of aiding Nott, the principal, as was their object, would be conferring a benefit upon Watriss. Moreover, the notes were payable with interest semi-annually, and the sum taken, although it might be equal in amount to the interest for two years on one note, and one on the other, was in no proper sense any more interest than it was principal, for the interest was not due at that time any more than the principal.

In arriving at the conclusion to which we have, upon this branch of the case, we have not considered the fact that this action is founded upon an instrument under seal ; for we regard it as settled in this State, as well as in others, that the same equitable principles which regulate the relation of principal and surety, are applied at common law upon specialties as upon simple contracts. We are aware that a different rule prevails in England, and in some other jurisdictions, and that in such

cases a party must resort to a court of equity. No question is raised upon this point in the argument, and we pass it without further comment.

Neither have we turned our attention particularly to the question as to the authority of Nott to deliver the deed in the manner and for the purposes for which it was delivered, as that question will perhaps more properly arise at the trial under the plea of *non est factum*. If the deed was not legally delivered, the defendants cannot be liable upon it.

We have not omitted to examine all of the authorities cited by the plaintiff, but we do not find in them anything that appears to us seriously to conflict with the conclusion to which we have arrived, that the undertaking of the defendants was collateral to that of Nott, and their covenant to take the shares and pay the notes conditional and dependent upon his failure to pay the same ; and that the deed being put into the hands of Nott on the 15th, to be delivered by him to Watriss as collateral security for the payment of $10,000 in cash, to be advanced to Nott, and of $10,000 for the land, to be conveyed to him unincumbered, and this with the knowledge of Watriss, the new contract on the 16th, whereby Nott was to receive only $8,317, and to give a mortgage back upon the land, was a fraud in law, if not in fact, upon the defendants, which would discharge them from their undertaking. The conditions upon which they made the deed, and upon which it was to be delivered to Watriss, have never been performed by him, and therefore they are not liable upon it.

The case of *The North British Insurance Company* v. *Lloyd*, 28 Law and Equity 456, which is particularly relied upon as being an answer to many of the authorities cited, differs materially, as we conceive, from the cases under consideration. The facts were substantially these : The plaintiff had lent to Sir Thomas Brancker 10,000 pounds, upon the deposit of certain shares as security, and upon certain other conditions. Subsequently James Brancker, the brother of Thomas, in consideration of six months extension of payment to Thomas, gave his security for two thousand pounds of the loan. After this, by an arrangement between the

plaintiffs and the Branckers, the former agreed to take the guaranty of the defendant and others, as a substitute for the security given by James Brancker. At the time that the defendant signed the guaranty, the fact that James Brancker had previously given his security for the two thousand pounds, and that it was to be surrendered, was not made known to him, and it was contended that this was a material matter, that should have been disclosed, and not being, the guaranty was void; that it was a fraud in law upon the defendant. But the Court of Exchequer held otherwise. *Pollock*, C. B., said that the non-disclosure of the circumstance of the change of security, even if it had been material, would not have vitiated the guaranty, unless it had been fraudulently kept back, and that there was no ground to impute fraud in fact to the plaintiffs: That it did not appear that the circumstances under which the loan was negotiated, or was to be continued, were kept back, or that the defendant was ignorant of the pecuniary ability of Thomas Brancker: That he signed the guaranty with a knowledge of all the facts, except that he did not know that James Brancker had ever given any security, and of course he was ignorant that it was to be surrendered.

Without expressing any opinion as to the correctness of the views of the court in that case, we think there is a manifest difference between the facts there stated and those now under consideration. There the complaint was, that it was not made known to the defendant, *before* he signed the guaranty, that James Brancker had given security for two thousand pounds of the loan, and that the security was to be surrendered. The defendant was informed of all other matters connected with the loan; and it might be asked, with much plausibility certainly, why, if he was willing with the facts before him to become responsible, he should complain when those facts were in no way changed, and every thing remained as he supposed it was when he signed the guaranty. He assumed the same responsibilities as were represented to him, and as he supposed he was assuming; and the fact that the security given by James Brancker was to be withdrawn,

being unknown to him, had no influence upon his action whatever, and did not increase the liability which he supposed he was assuming. In this case the defendants signed their bond upon the representation and agreement that it was to be given to the plaintiff if he let Nott have the $10,000 in cash, and the seven acres of land unincumbered; but instead of being delivered for the purpose and upon the conditions for which it was executed, it was delivered for another purpose, and for one to which the defendants were not parties, and to which they did not assent.

The other question presented by the demurrer may be briefly disposed of. The plea alleges that by the statute of Massachusetts, in which State the notes were made, the taking of the interest in advance was usurious, and that a deduction of threefold of the amount taken should be made from the sum advanced. The plea also alleges that the conveyance of the land was for a consideration double its value, and that it was agreed between Watriss and Nott that $5000 usury should enter into and form a part of the transaction.

It is unnecessary to say what would have been our conclusion upon this plea had this suit been brought in Massachusetts. By the law of that State, the contract, into which it is alleged that usury entered, was not void, and an action could be maintained upon it, and judgment recovered, after making the deductions, as pointed out by the statute. The provisions of the Massachusetts statute which are pleaded, apply only to the remedy, and can extend only to suits brought in that State. They can have no effect when a remedy is sought under our laws. "The general rule is that those provisions of law which determine the construction, operation and effect of a contract, are part of the contract, and follow it, and give effect to it, wherever it goes; but that in regard to remedies, the *lex fori*, the law of the place where the remedy is sought, must govern." We cannot, therefore, enforce the law of Massachusetts in this suit, for it applies only to the remedy; and it is the statute of Massachusetts alone that is pleaded.

If the usury in the contract would, by the law, make the con-

Watriss *v*. Pierce.

tract void, so that the consideration would be thereby affected, a different question would be raised. There are authorities which show that where, by the *lex loci*, usury vitiates the contract, it may be pleaded wherever the action is brought, as the contract is thereby shown to be void by the law of the place where it was made. But that is not the question here, and we do not propose to consider it.

According to these views, the demurrer to the pleas of fraud must be overruled, and that to the pleas of usury sustained.